OPINION OF THE COURT
Renee R. Roth, S.
This contested probate proceeding raises the issue of the construction to be given to paragraph (9) of EPTL 4-1.1 (a). This paragraph was added in 1971 to the statute governing descent and distribution (EPTL 4-1.1) and includes great-grandparents and their issue as distributees in intestacy in certain limited circumstances, namely, where decedent is an infant or an adjudicated incompetent.
The decedent in this proceeding, Frieda Niner, was not however “an adjudicated incompetent at the date of her death” on May 17,1982. She was instead, as of September 1980, a conservatee under Mental Hygiene Law article 77.
Mrs. Niner left a will dated November 10, 1976 disposing of her residuary estate to her brother if he survived or to named charities if he predeceased. Decedent’s brother (and a sister also named in the will) predeceased without issue. Thus the charities have become the residuary beneficiaries.
Probate of this instrument is opposed by three individuals (Rose Sittenfeld Elias, Joan Gladstone and Alice Cohen Han-berg) who contend that they are distributees by virtue of para *1098 graph (9) of EPTL 4-1.1 (a). If these objectants are in fact Mrs. Niner’s distributees, then as persons “adversely affected by the admission of the will”, they have standing to object (SCPA 1410).
The legislative history of this section of the statute does not shed much light on the novel issue before the court.
Under former Decedent Estate Law § 83, the right to inherit did extend to great-grandparents and their issue without restriction.
After 1963, on recommendation of the Temporary State Commission on the Law of Estates, the Legislature totally eliminated great-grandparents and their issue from the line of succession. The reason for this change was explained by the Bennett Commission in its Second Report (1963 NY Legis Doc No. 19, at 24) as follows: “These amendments will not only simplify the law by making unnecessary the expensive and time-consuming searches now made in both probate and administration proceedings for distant relatives not expressly favored by the testator, but will concentrate succession among the near and dependent relatives of the intestate whom he most likely would have favored if he had made a will. A person who wishes to vary the provisions of this statutory will should exercise his privilege of testamentary disposition.”
' An amendment in 1971 added paragraph (9) restoring, without explanation, great-grandparents and their issue to the line of intestate succession but only under narrow circumstances: “[provided that in the case of a decedent who is survived by great-grandparents only, or the issue of great-grandparents only, such great-grandparents or [their] issue shall not be entitled to inherit from the decedent unless the decedent was at the time of his death an infant or an adjudged incompetent’ (EPTL 4-1.1 [a] [9]; emphasis added).
The motivation for this amendment is perhaps best explained by Dean Rohan in his Practice Commentary (McKinney’s Consolidated Laws of NY, Book 17B, EPTL 4-1.1, p 650): “The obvious objective of the statute is to cover two narrow situations in which the decedent would not be in a position to readily dispose of his estate. A minor under the age of eighteen cannot make a valid will, and a will of an adjudicated incompetent would be open to serious challenge on the quéstion of testamentary capacity.”
As noted earlier, Mrs. Niner was not an “adjudicated incompetent at the date of her death” but was instead a conservatee. Accordingly, the proponent of the will, Irving Trust Company, has moved to dismiss the objections to probate.
This motion raised two questions:
*1099 (1) Is paragraph (9) applicable only to the estate of an adjudicated incompetent as expressly provided, or should it be construed to apply by implication to the estate of a conservatee?
(2) If the statute is applicable to the estate of a conservatee, are the three objectants as issue of decedent’s great-grandparents, her sole distributees in intestacy?
With regard to the second issue, it is observed that in her papers, Rose Sittenfeld Elias describes herself as the daughter of a first cousin of the decedent’s mother. If correct, she would thus be a second cousin of the decedent. She would be a distributee only if the proof eliminated all other maternal as well as paternal relatives closer in degree of relation to decedent. She would be a sole distributee only if the proof additionally eliminated all other paternal or maternal second cousins equally entitled.
The two other objectants are described as being nieces of Mrs. Elias. As such, because there is no per stirpes distribution except in the case of issue or siblings, they are cut off from inheriting by their aunt Mrs. Elias who is one step closer in degree of kinship to decedent (EPTL 4-1.1 [c]). Since they are not distributees as a matter of law, the motion to dismiss as to Joan Gladstone and Alice Cohen Hanberg is granted.
Ordinarily, the issue of standing to bring a proceeding is determined before considering any other issue. However, in this case, since an issue has been raised as to whether Mrs. Elias would have standing to object even if she proved her status as a second cousin, we will first consider whether paragraph (9) is also applicable to the estate of a conservatee.
Paragraph (9) was added in 1971; Mental Hygiene Law article 77 was adopted in 1972. There is no useful purpose in speculating whether the Legislature would have included in paragraph (9) the category of conservatee if such had existed in 1971.
However, a consideration in enacting paragraph (9) was that, although not void as a matter of law, the will of an adjudicated incompetent (particularly a will executed after such adjudication) is certainly subject to challenge on the issue of testamentary capacity (Rollwagen v Rollwagen, 63 NY 504, 518; Matter of Stephani, 250 App Div 253; Matter of Loehr, 187 App Div 957; Matter of Barney, 185 App Div 782; Matter of Coe, 47 App Div 177; Matter of Signorelli, 46 Misc 2d 849).
This is not true in principle of a conservatee, “who by reason of advanced age, illness, infirmity, mental weakness, intemperance, addiction to drugs, or other cause, has suffered substantial impairment of his ability to care for his property or has become unable to provide for himself or others dependent upon him for support” (Mental Hygiene Law § 77.01).
*1100 Indeed, the Legislature specifically provided “that nothing herein shall be deemed to limit the power of the conservatee to dispose of property by will, if he possesses the requisite testamentary capacity” (Mental Hygiene Law § 77.25 [c]).
Mrs. Elias argues that, although decedent was declared a conservatee in 1980, her condition was such that she could have as readily been adjudicated an incompetent. This may very well be true (see, Mental Hygiene Law §§ 78.07, 77.04).
But Mrs. Niner’s mental condition is not before me. The issue before this court is whether paragraph (9), a provision which added a class of distributees to the statute of descent distribution on condition that decedent was “an adjudicated incompetent”, shall be construed by implication to include such class of distributees of a decedent who is merely a conservatee.
It is my conclusion that this is a matter for the Legislature and not for the courts. There are very substantial differences in law as well as in fact between adjudicated incompetents and conservatees as a class. The first class will often be found to suffer from mental illness or incapacity (cf. former Civ Prac Act § 1356 with Mental Hygiene Law § 78.01). The latter class will often be found to suffer merely from old age or physical incapacity. As previously discussed, adjudicated incompetents will more often be found to be incapable of executing a will. Conservatees will more often be found to have the mental capacity to make a will (Dobie v Armstrong, 160 NY 584; Matter of Snelling, 136 NY 515; Children’s Aid Socy. v Loveridge, 70 NY 387; Matter of Beneway, 272 App Div 463; Matter of Duffy, 127 App Div 174; Matter of Lefferts, 29 Misc 2d 594, affd 16 AD2d 939; see also, 2B Warren’s Heaton, Surrogates’ Courts § 186-C, If 9 [c]).
Moreover, an order appointing a conservator is not an adjudication of the conservatee’s incompetence since the statute specifically provides that “[ajppointment of a conservator shall not be evidence of the competency or incompetency of the conservatee” (Mental Hygiene Law § 77.25 [b]; see also, Bankers Trust Co. v Martin, 51 AD2d 411).
Paragraph (9) was enacted to permit a class of remote relatives to inherit in intestacy only where the decedent was not able to provide for them by reason of infancy or incompetency. Since conservatees as a class are often quite competent to make a will and provide for such relatives, it cannot be concluded by implication that paragraph (9) was intended to benefit such remote relatives of a decedent who was merely a conservatee.
The motion by the proponent to dismiss the objections to probate as a matter of law is granted.